**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

BRIDGET L. B.,[1]

                Plaintiff,

       v.                                           **DECISION AND ORDER**
                                                                   6:23-CV-6410-A

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

## INTRODUCTION

Plaintiff Bridget Lynn B. ("Plaintiff") brings this action seeking review of the Commissioner of Social Security's final decision that denied Plaintiff's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), and for Supplemental Security Income ("SSI") under Title XVI of the SSA. The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. Nos. 4, 5), and Plaintiff filed a reply (Dkt. No. 6). For the following reasons, the Commissioner's motion (Dkt. No. 5) is GRANTED, and Plaintiff's motion (Dkt. No. 4) is DENIED.

---

[1] Consistent with this Court's Standing Order dated November 18, 2020, and to better protect personal and medical information of non-governmental parties, this Decision and Order will identify Plaintiff using only her first name and last initial.

**PROCEDURAL HISTORY**

Plaintiff protectively filed her applications for DIB and SSI on May 4, 2020, at the age of 46, alleging disability as of February 20, 2020, based upon anxiety, depression, diabetes, peripheral neuropathy,[2] hypothyroidism, left knee surgery, tendonitis in shoulders, and a twice-broken right elbow that "sometimes locks up." T. 64-65, 72-73.[3]  Plaintiff's claims were initially denied, and again upon reconsideration.  T. 124-133, 148-171.  After requesting a hearing before an Administrative Law Judge ("ALJ"), on December 15, 2021, Plaintiff and her attorney appeared at a telephonic hearing, at which Plaintiff and a Vocational Expert testified. T. 39-61.  The ALJ issued an unfavorable decision finding Plaintiff not disabled within the meaning of the SSA through January 18, 2022, the date of the administrative decision.  T. 12-38.  On May 26, 2023, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became final.  T. 1-6.  This action seeks review of the Commissioner's final decision.

**THE ALJ'S DECISION**

The ALJ followed the five-step sequential evaluation process that ALJs are required to use in making disability determinations.  *See Schaal v. Apfel*, 134 F.3d

---

[2] "Peripheral neuropathy happens when the nerves that are located outside of the brain and spinal cord (peripheral nerves) are damaged.  This condition often causes weakness, numbness and pain, usually in the hands and feet…One of the most common causes of neuropathy is diabetes." *Peripheral Neuropathy – Symptoms & causes*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/symptoms-causes/syc-20352061 (last visited Feb. 13, 2026).

[3] "T. __" refers to the pagination located in the bottom, right-hand corner of the administrative transcript at Dkt. No. 3.

496, 500-01 (2d Cir. 1998) (summarizing the standard of review and the five-step process); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (same); *see also* 20 C.F.R. §§ 404.1505 (basic definition of disability), 404.1520 (describing the five-step process for DIB determinations), 416.920 (the same for SSI determinations).

At the outset, the ALJ found that with respect to Plaintiff's DIB claim, Plaintiff met the insured status requirements of the SSA through September 30, 2020.[4] At step one of the five-step sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of February 20, 2020. T. 17.

At step two, the ALJ determined that Plaintiff had several nonsevere impairments, as well as the following severe impairments: "obesity, diabetes mellitus, diabetic neuropathy, bilateral cubital tunnel syndrome, trigger finger, bilateral knee degenerative joint disease and torn menisci status post left knee arthroscopy, bilateral degenerative changes and calcific tendinitis in the shoulders, depressive disorder, and anxiety disorder." T. 17. The ALJ noted these severe impairments "significantly limit the [Plaintiff's] ability to perform basic work activities as required by SSR 85-28." T. 18. The ALJ concluded at step three, however, that Plaintiff's impairments did not, individually or in combination, meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 19.

---

[4] Claimants must meet the insured status requirements of the SSA to be eligible for DIB. *See* 20 C.F.R. § 404.130.

3

After considering the entire record and before proceeding to step four, the ALJ determined Plaintiff had the residual functional capacity ("RFC")[5] to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following limitations:

> [Plaintiff] can stand and walk about two hours total and sit up to eight hours total in an eight-hour workday with normal breaks; can lift, carry, push, and pull up to 10 pounds occasionally; can never climb ladders, ropes, or scaffolds; must avoid all exposure to unprotected heights and dangerous machinery; can frequently reach overhead, handle, and finger bilaterally; can occasionally operate bilateral foot controls; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and is limited to simple routine tasks in a work environment that involves only simple work-related decisions with few, if any, workplace changes and that is free from fast-paced production.

T. 21.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. T. 30. But given Plaintiff's age, education, and her RFC, at step five, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. T. 31. Consequently, the ALJ found that Plaintiff was not disabled from February 20, 2020, through the date of his decision, and denied her claims. T. 32.

---

[5] "A plaintiff's RFC is the most that a claimant can do despite their impairments and is determined by assessing all the relevant evidence." *Sheila C. v. O'Malley*, 24-CV-00002 (RMS), 2025 U.S. Dist. LEXIS 816, *19 (D. Conn. Jan. 3, 2025) (citing 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)).

4

## STANDARD OF REVIEW

"In reviewing a final decision of the SSA, [a district court] is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citations omitted); *see* 42 U.S.C. § 405(g). "[I]f the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position." *Ashley C. v. Saul*, 3:19-cv-1212 (MAD), 2020 U.S. Dist. LEXIS 201474, *6 (N.D.N.Y. Oct. 29, 2020) (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## ANALYSIS

Plaintiff's argument can be distilled to a claim that the ALJ's RFC determination was not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ improperly relied on stale opinion evidence, that is, evidence that had been rendered prior to her worsening right knee impairment, cubital tunnel syndrome, and trigger finger, "all which required surgery" (Dkt. No. 4-1, p. 20). The three opinions the ALJ considered when formulating Plaintiff's RFC were those offered by consultative examiner Harbinder Toor, M.D. ("Dr. Toor"), on August 21, 2020 (T. 707-710); state agency medical consultant H. Miller, M.D. ("Dr. Miller"), on August 26, 2020 (T. 81-84); and state agency medical consultant, C. Krist, D.O. ("Dr.

5

Krist"), on April 1, 2021 (T. 100-105).  In related fashion, Plaintiff then reasons that (1) the ALJ necessarily relied upon his own lay interpretation of the medical evidence in determining the RFC, and (2) he failed to adequately develop the record with an updated medical opinion assessing any limitations stemming from Plaintiff's worsened physical condition.  The Court notes that by restricting her arguments to her physical limitations, Plaintiff has waived any challenge concerning her mental limitations.  *See generally Pourpore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

Contrary to Plaintiff's contentions, the Court concludes that the ALJ did not make any legal error in his formulation of the RFC, and the RFC determination was supported by substantial evidence.

"A stale medical opinion does not constitute substantial evidence to support an ALJ's findings."  *Clute ex rel. McGuire v. Comm'r of Soc. Sec.*, 18-CV-30-FPG, 2018 U.S. Dist. LEXIS 215156, *12 (W.D.N.Y. Dec. 21, 2018) (citing *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015) *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (summary order)).  "However, a medical opinion is not necessarily stale simply based on its age.  A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." *Anthony F. v. Comm'r of Soc. Sec.*, 23-CV-00033-FPG, 2023 U.S. Dist. LEXIS 199058, *12 (W.D.N.Y. Nov. 6, 2023) (citing *Camille*, 652 F. App'x at 28 n.4).  Indeed, "[s]ignificant deterioration or change in a claimant's impairments is…a necessary factor in finding staleness."  *Diane B. v. Comm'r of Soc. Sec.*, 19-CV-628S, 2021 U.S. Dist. LEXIS 94182, *15 (W.D.N.Y. May 18, 2021) (collecting cases).

Plaintiff asserts that her condition significantly deteriorated in late 2020 onward, after the above-referenced opinions were rendered. The ALJ considered this position and explicitly rejected it, after thoroughly reviewing and analyzing the proof in the record.

With respect to Plaintiff's right knee, the ALJ noted that after an orthopedic examination in November 2020 that primarily focused on Plaintiff's left knee, for which she had undergone an arthroscopy in May 2019,[6] "[t]he claimant's *complaints* materially changed…, as she would primarily allege right knee difficulties after an injury around Thanksgiving." T. 27 (emphasis added) (citing T. 944-946 [treatment notes from December 1, 2020, appointment with orthopedist, at which Plaintiff reported "she was walking across her house inside and her knee popped on the right side," after which she experienced pain, discomfort, and swelling]). An MRI performed in mid-February 2021 revealed a meniscus tear in her right knee. *See* T. 971.

The ALJ recognized that the meniscus tear had not resolved through the date of his decision but concluded that Plaintiff's "orthopedic records continued to suggest lesser restrictions than [those] to which she testified" at the administrative hearing. T. 27; *see* T. 22 (summarizing hearing testimony, and determining that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms" were "only partially consistent" with the record). Indeed, the ALJ noted

---

[6] Within two months after the surgery on her left knee, Plaintiff had already returned to work, and she was cleared by her orthopedist in July 2019 to continue working "without restrictions"; she was directed to avoid only "high impact activities." T. 950-951.

7

that at Plaintiff's handful of orthopedic appointments from December 2020 through August 2021: (1) the examination findings were generally benign, just as they were in August and November 2020; (2) only conservative treatment was recommended, including physical therapy and over-the-counter anti-inflammatory drugs; (3) Plaintiff rejected recommended, further physical therapy and repeatedly turned down suggested cortisone injections; and (4) Plaintiff oscillated between complaints of increased pain and reports that her right knee pain was not limiting and allowed her to complete activities of daily living without difficulty.  T. 27; *see* T. 932-946.

      The ALJ then observed that at an appointment in August 2021, after once again declining injection therapy, Plaintiff instead requested arthroscopy for her right knee (T. 932), and she moved forward with a preoperative appointment in September 2021 (T. 928-931).  Plaintiff's surgery for her right knee was originally scheduled for early October 2021, but it was indefinitely delayed until she decreased her blood-sugar levels, which were elevated due to her "sub-optimal control of her diabetes."  T. 27; *see* T. 25-26 (noting Plaintiff's "incomplete adherence to prescribed care" for her diabetes, which had "caused delays in scheduled surgeries"), 48-50 (Plaintiff's hearing testimony to this effect), 928 (indicating right knee arthroscopy scheduled for October 1, 2021).

8

As to Plaintiff's cubital tunnel syndrome[7] and trigger finger,[8] at step three of his decision, the ALJ found "the record does not establish inability to use one or both upper extremities such that [Plaintiff] could not independently initiate, sustain, and complete work-related activities involving fine and gross motor movements."  T. 19.

In formulating the RFC, as he did for Plaintiff's right knee, the ALJ considered the longitudinal record of Plaintiff's "allegations of sensory problems in the feet and hands, which appear[ed] to be more restrictive in the upper extremities."  T. 28.  The ALJ then commented that while Plaintiff had received "specialized care" for these issues, that care was "limited" and the clinical findings "suggested only minor functional loss," with most of her care taking place "years prior to the alleged onset date."  T. 28; *see* T. 29.  The ALJ arrived at this finding upon a comprehensive review and summary of the treatment record from 2015-2016 (*see* T. 595-600, 791-

---

[7] "Running from your neck to your hand is a nerve called the ulnar.  It helps you control muscles and feel sensations in your forearm, hand and fingers.  Cubital tunnel syndrome happens when that nerve is irritated or compressed…Because of your ulnar nerve, you can control some of the bigger muscles in your forearm (the ones that help you grip objects), feel your little finger, feel half of your ring finger and control many of the muscles in your hand.  Those muscles in your hand help you perform fine movements such as typing on a keyboard and playing a musical instrument." *Cubital Tunnel Syndrome*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/21997-cubital-tunnel-syndrome (last updated Oct. 25, 2021).

[8] "Trigger finger makes a finger get stuck in a bent position.  It may straighten suddenly with a snap.  The fingers most often affected are the ring finger and the thumb, but the condition can affect any finger.  Trigger finger happens when the tendon that controls that finger can't glide smoothly in the sheath that surrounds it.  This may occur if part of the tendon sheath becomes swollen or if a small lump forms on the tendon." *Trigger finger – Symptoms & causes*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/trigger-finger/symptoms-causes/syc-20365100 (last visited Feb. 13, 2026).

799); a consultative examination in August 2020 (*see* T. 707-710); an appointment with Plaintiff's neurologist on December 4, 2020 (notably, four years after Plaintiff's cubital tunnel syndrome was deemed to have improved and she had last seen her neurologist, and 10 months after the alleged onset date) (*see* T. 790); and two surgical consultations in April and September 2021 (*see* T. 1077-1079).

Nerve conduction studies and EMG testing of Plaintiff's right arm in March/April 2015 confirmed cubital tunnel syndrome in her right elbow, which was "moderately severe" and likely "a sequela" of her injury to her right arm, *i.e.*, she relayed that she had tripped on her driveway at home in early winter and landed on outstretched arms. In September 2015, Plaintiff reported improvement of her right-elbow neuropathy, which was a spontaneous improvement as she had never obtained or used an elbow brace as previously directed by her neurologist. Repeat electrophysiological studies confirmed improved cubital tunnel syndrome, meaning she could monitor the condition without the need for any surgical evaluation.

Almost five years later, at the consultative examination with Dr. Toor on August 21, 2020, Plaintiff complained of "sometimes" feeling tingling in her arms or hands and asserted that she "sometimes" had difficulty driving, reaching, grasping, and holding. The ALJ noted that Dr. Toor's physical examination of Plaintiff revealed intact hand and finger dexterity, and grip strength 5/5 bilaterally. T. 28. Plaintiff admitted to Dr. Toor that she had not monitored her blood sugar levels despite having Type 2 diabetes since 2012.

Nerve conduction studies and EMG testing at Plaintiff's neurology appointment on December 4, 2020, "reconfirmed" her right elbow cubital tunnel

10

syndrome, which was "slightly worse" when compared to her evaluation approximately five years before that. She also complained of numbness in her bilateral pinky fingers, which had recently recurred (in 2015, she had complained of numbness and tingling in her right-hand ring and pinky fingers). The ALJ found the physical examination on that date "continued to show only minor abnormalities inconsistent with the claimant's testimony of stark functional loss." T. 28. Moreover, Plaintiff's doctor "admonished" her to make efforts to control her blood sugars to minimize the risk of worsening her neuropathy in her feet. Plaintiff told her neurologist that she was interested in a formal surgical evaluation for her cubital tunnel syndrome. Her neurologist referred her for right ring trigger finger release, to be followed by right cubital tunnel release, but upon surgical consultation in April and September 2021, those surgeries were delayed and could not be scheduled due to Plaintiff's elevated blood glucose levels. The ALJ found that during both consultations, Plaintiff "continued to have benign clinical findings[.]" T. 29. At the time of Plaintiff's hearing on December 15, 2021, her high blood sugar had still prevented these surgeries. T. 48.

      Overall, regarding Plaintiff's right knee, the ALJ concluded: "[t]here is little objective evidence of functional change…despite the claimant's inability to move forward with the recommended surgery." T. 28. Likewise, regarding Plaintiff's upper extremities, the ALJ concluded that "[o]verall, [Plaintiff's] benign clinical signs would suggest no more than minimal restriction in her ability to use the upper extremities for fine and gross motor activities, such as feeling, handling, fingering, and reaching[.]" T. 29.

11

Again, a stale opinion is one "rendered before some significant development in the claimant's medical history." *Steve P. v. Comm'r of Soc. Sec.*, 19-CV-0492 (MWP), 2021 U.S. Dist. LEXIS 17640, *14-15 (W.D.N.Y. Jan. 29, 2021) (internal quotation marks and citation omitted). "Plaintiff bears the burden at step four and must show that her physical condition deteriorated after the medical opinions were provided." *Jennifer O. v. Comm'r of Soc. Sec.*, 1:20-CV-1474 (WBC), 2022 U.S. Dist. LEXIS 123942, *17-18 (W.D.N.Y. July 13, 2022) (citing *Vincent B. v. Comm'r of Soc. Sec.*, 561 F. Supp. 3d 362, 367 (W.D.N.Y. 2021)).

Plaintiff has failed to meet this burden. In challenging the functional limitations in the RFC, Plaintiff simply argues, first, that the RFC limiting her to sedentary work "does not account for Plaintiff's need to elevate her right leg to decrease the swelling in her right knee." Dkt. No. 4-1, p. 19. The page of the record to which Plaintiff cites, however, is a vague and self-reported statement made at a single visit to her orthopedist in August 2021 that "she does have swelling at times, but [it] does decrease with rest and elevating the right leg." T. 932. Second, with respect to Plaintiff's upper extremities, she argues that "there is absolutely no indication in the record that Plaintiff would have been capable of frequent reaching with her right arm, or frequent handling and fingering with her right hand, given her severe cubital tunnel syndrome and trigger finger—both of which required surgery." Dkt. No. 4-1, p. 19. The Court disagrees and concludes these functional limitations in the RFC were well-supported.

"An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear."

*Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. May 14, 2021) (summary order) (citing 20 C.F.R. § 404.1527(d)(2)). "Indeed, it is the very duty of the ALJ to formulate an RFC based on all relevant evidence, not just medical opinions, in Plaintiff's record." *Jennifer O.*, 2022 U.S. Dist. LEXIS 123942, at *7-8 (citing 20 C.F.R. §§ 404.1545(a)(1) ("We will assess your [RFC] based on all the relevant evidence in your case record."), 416.945(a)(1) (same)). It is also well-settled that an ALJ's RFC finding need not "perfectly correspond" to any medical opinion in his decision if it is made "consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). Furthermore, "[a]n ALJ may accept parts of a doctor's opinion and reject others" in crafting an RFC. *Camille*, 652 F. App'x at 29 n.5 (concluding the ALJ properly used a medical opinion as a basis for the RFC, while incorporating additional limitations based on, among other things, plaintiff's testimony that the ALJ credited).

      The ALJ concluded that the record evidence as a whole supported greater restrictions than those assessed by the doctors who offered opinions as to Plaintiff's physical limitations. *See* T. 29. He found the opinions of Dr. Toor and Dr. Miller "less persuasive" than the functional assessment of Dr. Krist, the latter which was "the most restrictive physical functional assessment in all regards." T. 30. The ALJ found Dr. Krist's assessment to be the "most persuasive" because it was "reasonably consistent" with Plaintiff's medical history and supported by objective medical evidence and Dr. Krist's supporting explanations. T. 29; *see* 20 C.F.R. §§ 404.1520c(a) (an ALJ must consider all medical opinions and "evaluate [their] persuasiveness" based on five factors, the most important of which are

13

"supportability" and "consistency"), 416.920c(a) (same).  Altogether, the ALJ found "greater restriction than Dr. Krist opined."  T. 29.  Regarding the limitations raised by Plaintiff in her motion, the ALJ fully adopted Dr. Krist's opinion that Plaintiff could frequently reach overhead bilaterally and frequently handle and finger bilaterally, "citing neuropathies and justifying restriction to 'frequent' by noting generally intact grip strength and dexterity in the hands and fingers."  T. 29.

As set forth above, in formulating Plaintiff's RFC, the ALJ properly considered the totality of the evidence, that is, Plaintiff's testimony; the medical opinions; and objective medical evidence provided before and after the opinion testimony was rendered, including evidence concerning Plaintiff's planned surgeries.  Furthermore, Plaintiff has not pointed to anything in the record establishing more restrictive limitations based on the meniscus tear in her right knee, cubital tunnel syndrome, or trigger finger—even with the prospect of several surgical procedures.  As such, the medical opinions are not stale, and there is no reason to remand the case on this basis.  *See*, *e.g.*, *Samantha T. v. Comm'r of Soc. Sec.*, 1:22-CV-002024 U.S. Dist. LEXIS 194956, *13 (W.D.N.Y. Oct. 25, 2024) (internal citation omitted) (despite plaintiff's medication changes and diagnoses of additional mental impairments over the period of alleged disability, plaintiff failed to present evidence "that her functioning changed or that there was a period of decompensation to render the relevant medical opinions stale"); *Christopher C. v. Comm'r of Soc. Sec.*, 20-CV-01774, 2022 U.S. Dist. LEXIS 203436, *10 (W.D.N.Y. Nov. 8, 2022) ("[R]emand is not warranted where the ALJ fully analyzed the more recent evidence.") (citing *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 644 (2d Cir. 2020) (summary

14

order)); *Jennifer O.*, 2022 U.S. Dist. LEXIS 123942, at *17-18 ("[A]lthough Plaintiff asserts her subsequent surgery rendered the opinions stale, Plaintiff fails to provide any evidence establishing greater functional limitations after surgery…"); *Abate v. Comm'r of Soc. Sec.*, 1:18-CV-0266 (WBC), 2020 U.S. Dist. LEXIS 143993, *16 (W.D.N.Y. Aug. 10, 2020) ("Although the record included surgery for Plaintiff's left knee and the additional cervical impairment, such events did not render Dr. Schwab's opinion impermissibly stale.  Overall, Plaintiff fails to show any additional limitations caused by these subsequent medical events.  Further, the ALJ considered Plaintiff's knee impairments and cervical spine MRI in formulating her RFC determination.").

Additionally, the ALJ did not have to further develop the record or order an additional consultative examination, as "[t]he ALJ is 'not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability.'"  *Jennifer O.*, 2022 U.S. Dist. LEXIS 123942, at *18-19 (quoting Janes v. Berryhill, 710 F. App'x 33, 34 (2d Cir. 2018) (summary order)); *see Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information.").

## **CONCLUSION**

For all the above reasons, the Commissioner's motion (Dkt. No. 5) for judgment on the pleadings, asking that this Court affirm the Commissioner's final decision denying Plaintiff disability benefits, is GRANTED; and Plaintiff's motion

(Dkt. No. 4) for judgment on the pleadings, asking this Court to vacate the Commissioner's final decision, and either find that Plaintiff is entitled to DIB and SSI under the SSA and reverse and remand the case solely for the purpose of calculating benefits, or in the alternative, to reverse and remand this matter for further administrative proceedings, is DENIED.  The Clerk of the Court shall take all steps necessary to close this case.

**IT IS SO ORDERED.**

          *s/Richard J. Arcara*
          HONORABLE RICHARD J. ARCARA
          UNITED STATES DISTRICT COURT

Dated:  February 13, 2026
       Buffalo, New York